UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN, <br><br> Plaintiff, <br><br> v. <br><br> MARRONE BIO INNOVATIONS, INC., ROBERT A. WOODS, KEVIN HELASH, LARA L. LEE, PAMELA G. MARRONE, PH.D., YOGEST MAGO, KEITH MCGOVERN, ZACHARY S. WOCHOK, PH.D., and STUART WOOLF, <br><br> Defendants. | Civil Action No. 22-cv-3978 <br><br> **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Marrone Bio Innovations, Inc., ("Marrone Bio or the "Company") the members Marrone Bio's board of directors (the "Board" or the "Individual Defendants"), and Bioceres Crop Solutions Corp. and affiliates ("Bioceres" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Marrone Bio and Bioceres.

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form F-4 (the

"Registration Statement") to be filed on May 10, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby BCS Merger Sub, Inc., a direct, wholly owned subsidiary of Bioceres ("Merger Sub"), will merge with and into Marrone Bio with Marrone Bio surviving as a direct, wholly owned subsidiary of Bioceres (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Marrone Bio stockholder will receive 0.888 shares of Bioceres common stock (the "Merger Consideration").

3. As discussed below, Defendants have asked Marrone Bio's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Marrone Bio's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the proxy solicitor of the Company, Morrow Sodali Global LLC, is headquartered in this District, and the Registration Statement was signed in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Marrone Bio stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Robert A. Woods has served as a member of the Board since February 2018 and is the Chairman of the Board.

11. Individual Defendant Kevin Helash has served as a member of the Board since August 2020 and is the Company's Chief Executive Officer.

12. Individual Defendant Lara L. Lee has served as a member of the Board since November 2020.

13. Individual Defendant Pamela G. Marrone, Ph.D. is the Company's founder and has served as a member of the Board since the Company's inception in 2006.

14. Individual Defendant Yogesh Mago has served as a member of the Board since February 2018.

15. Individual Defendant Keith McGovern has served as a member of the Board since May 2020 and is the President and Chief Executive Officer of the Company.

16. Individual Defendant Zachary S. Wochok, Ph.D. has served as a member of the Board since May 2016.

17. Individual Defendant Stuart Woolf has served as a member of the Board since August 2018.

18. Defendant Marrone Bio is a Delaware corporation and maintains its principal offices at 7780-420 Brier Creek Parkway, Raleigh, North Carolina 27617-7882. The Company's stock trades on the NASDAQ Capital Market under the symbol "MBII."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

21. Marrone Bio discovers, develops, and sells biological products for crop protection, crop health, and crop nutrition. Its products include Emergen, Foramin, Foramin ST, Optima, Takla, Pacesetter, Ympact, UBP, and UBP ST for increasing crop health, yield, and quality; Grandevo, a bioinsecticide that controls sucking and chewing insects through feeding; Haven, a plant health product to reduce sun stress and dehydration; Jet-Ag and Jet-Oxide peroxyacetic acid sanitizers that prevent, suppress, eliminate, and control algae, fungi, and bacterial diseases in agriculture and horticultural industries; and Majestene, a bionematicide to control soil-dwelling

nematodes and certain soil borne insects. The Company also offers Regalia and Stargus, which protects against fungal and bacterial diseases and enhances yields/quality; Venerate, a bioinsecticide that controls chewing and sucking insects and mites; and Zelto, a bionematicide that protects turf, including golf course fairways and greens, and promotes turf health by enhancing plant and root health. It provides its products directly through sales force, as well as through distributors and other commercial partners. The Company formerly known as Marrone Organic Innovations, Inc. Marrone Bio was incorporated in 2006 and is headquartered in Raleigh, North Carolina.

22. On March 16, 2022, the Company and Bioceres jointly announced the Proposed Transaction:

> ROSARIO, Argentina and RALEIGH, N.C., March 16, 2022 (GLOBE NEWSWIRE) -- Bioceres Crop Solutions Corp. (NASDAQ: BIOX) (Bioceres) and Marrone Bio Innovations, Inc. (NASDAQ: MBII) (MBI) announced today that they have entered into a definitive agreement to combine the companies in an all-stock transaction. Under the terms of the transaction, which has been unanimously approved by the Board of Directors of both companies, each share of MBI common stock will be exchanged at closing for ordinary shares of Bioceres at a fixed ratio of 0.088, representing a value of approximately $236 million, based on the Bioceres and MBI share prices at market close on March 15, 2022 and the number of current outstanding MBI shares.
>
> This transaction will combine Bioceres' expertise in bionutrition and seed care products with MBI's leadership in the development of biological crop protection and plant health solutions, creating a global leader in the development and commercialization of sustainable agricultural solutions. The companies together operate in 46 countries with approximately 640 employees, including two wholly owned manufacturing facilities and research and development (R&D) facilities located in Davis, California, and Rosario, Argentina.
>
> *"We are very excited about the value creation that will result from this combination for customers, employees and investors,"* said Bioceres Chief Executive Officer Federico Trucco. *"By combining*

*our current commercialized products and pipelines, we will be in a position to serve all major agriculture input categories with low environmental impact, highly efficacious, biological based solutions."*

Trucco added, *"MBI's commercial footprint in North America and Europe will strongly complement our existing efforts in these geographies, while Bioceres' leadership in Latin America will provide an excellent channel for MBI's portfolio in these important row-crop markets. Together, we will create a winning platform in one of the most dynamic segments of agriculture."*

*"Our merger has the potential to accelerate global reach, broaden our product offerings and expand our R&D programs,"* said Kevin Helash, Chief Executive Officer of Marrone Bio. *"Consumer and grower demand is accelerating for agricultural products that help produce safe, affordable food in a sustainable manner. We will be able to further serve that market opportunity and provide our distribution partners and our growers with greater returns on investment."* Helash noted that the merger is anticipated to generate $8 million in annual cost synergies, the majority of which relate to the elimination of duplicative public company expenses and consulting fees.

*"MBI and Bioceres have a shared culture of innovation and entrepreneurial spirit. With complementary R&D capabilities, the combination unlocks many additional possibilities for further groundbreaking commercial solutions,"* Helash concluded.

*"Bioceres has a proven track record in successfully integrating and scaling up businesses that have cultures focused on the commercialization of innovation. Since we integrated Rizobacter just over five years ago, revenue almost tripled and margins have expanded, driving ~4x increase in EBITDA. Rizobacter had the team, the products, the industrial capabilities and strong customer relationships needed to materialize growth, and we partnered with their leadership to unlock the opportunity,"* said Enrique Lopez Lecube, Bioceres' CFO.

*"Concurrent with Rizobacter's acquisition, Bioceres negotiated a $45 million long-term loan, today fully repaid, that brought in the financial resources to execute on our ambitious plans. Similarly, today we are announcing that in connection with the merger, we have agreed to terms for up to $45 million in long-term committed capital in the form of a convertible loan. In addition to each company's existing cash position, we estimate that pro forma cash*

6

*will be around $100 million. Finally, we are also announcing the conversion to equity of 75% of the 2023 convertible loan, with the other 25% restructured into a new 4-year loan,"* added Lopez Lecube.

*"We are excited that the scale created by this combination with Bioceres can accelerate and expand the commercialization of Marrone's existing products. The combined companies will have the quality, experience and depth of management as well as the financial resources to realize the full potential of Marrone's pipeline,"* said Dwight Anderson, Managing Partner at Ospraie Ag Science LLC, the largest shareholder of MBI.

The combined company will have a diverse customer base, product portfolio and geographic reach across a wide range of crops, positioned to serve the massive market opportunity emerging from the bio-reduction and replacement of chemical ag inputs. Key products in the combined companies' R&D pipelines include Bioceres' HB4 drought tolerance program in wheat and soybeans and MBI's breakthrough research in bioherbicides. Additionally, MBI recently submitted regulatory packages for its novel bioinsecticide/bionematicide products MBI-306 and MBI-206 to the U.S. Environmental Protection Agency and Brazilian authorities for approval, respectively.

**Transaction Details**

The transaction is expected to close in the third quarter of calendar 2022, subject to the approval of MBI shareholders, regulatory clearance and other customary closing conditions. Shareholders representing approximately 49% of MBI's outstanding shares of common stock have entered into customary transaction support agreements, agreeing to vote their shares in favor of the merger agreement and transactions contemplated thereby. Upon close, MBI shareholders will own approximately 16 million shares of Bioceres, with at least two individuals designated by MBI to be appointed to Bioceres' board of directors.

Linklaters LLP is serving as legal counsel to Bioceres. Roth Capital Partners is serving as financial advisor to MBI, and Morrison & Foerster LLP is serving as legal counsel to MBI.

\* \* \*

7

23. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Marrone Bio's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

24. On May 10, 2022, Marrone Bio and Bioceres jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Houlihan Lokey in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management of Bioceres and Marrone Bio prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and Houlihan Lokey with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections

that management provided to the Board and Houlihan Lokey. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company Projections and Bioceres Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2027: Adjusted EBITDAO, but fails to provide line items used to calculate this metric or a reconciliation of this non-GAAP metric to its most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

29. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Marrone Bio*

30. With respect to Houlihan Lokey's *Selected Companies Analysis*, the Registration Statement fails to disclose the metrics and the multiples of the selected comparable companies selected by Houlihan Lokey for the analysis.

31. With respect to Houlihan Lokey's *Selected Transactions Analysis*, the Registration Statement fails to disclose the metrics and the multiples of the selected comparable transactions selected by Houlihan Lokey for the analysis.

32. With respect to Houlihan Lokey's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the unlevered free cash flows of Marrone Bio and Bioceres; (ii) terminal value of the Company and Bioceres; (iii) the inputs and assumptions underlying the use of the range of terminal value multiples of 2.00x to 3.00x for Marrone Bio and 9.0x to 11.0x for Bioceres; (iv) the inputs and assumptions underlying the discount rates ranging from 16.00% to 25.00% for Marrone Bio and 15.00% to 20.00% for Bioceres; (v) the Company's and Bioceres's weighted average cost of capital; and (vi) the net debt of the Company and Bioceres common stock.

33. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

39. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of Marrone Bio within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Marrone Bio, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Marrone Bio, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Marrone Bio, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

44. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 16, 2022                    **MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*